IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PATRICIA ELAINE MORRISON**,

        Plaintiff,

v.                                                                                    Hon.
                                                                                     Case No. 17-
**LIFE INSURANCE COMPANY
OF NORTH AMERICA**,
a Pennsylvania corporation,

        Defendant.
_____/

**COMPLAINT**

Plaintiff, PATRICIA MORRISON, through her attorneys, ILANA S. WILENKIN and FELDHEIM & WILENKIN, P.C., complains against the above-named Defendant as follows:

**I.     Jurisdiction and Venue**

1)   This Court's jurisdiction exists under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically, 29 U.S.C. §§ 1132(e)(1) and 1132(f), which provisions grant this Court the jurisdiction to hear civil actions to recover benefits due under the terms of an employee welfare benefit plan.

2)   The subject welfare benefit plan consists of, *inter alia*, a long-term disability insurance plan as well as life insurance coverage with a waiver of premium due to total disability, which, upon information and belief, is sponsored by Quicken Loans, Inc. and underwritten and administered by Defendant Life Insurance Company of North America ("LINA") for the benefit of Quicken Loans employees.

3) 29 U.S.C. § 1133 provides a mechanism for the administrative or internal appeal of benefit denials. Plaintiff ("Mrs. Morrison") has either exhausted all of her appeals or has been denied access to a meaningful and/or full and fair pre-suit appellate review. This matter is ripe for juridical review.

4) Pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391, venue is proper in the Eastern District of Michigan.

## II. Nature of Action

5) This is a claim seeking disability income benefits pursuant to the Quicken Loans Health and Welfare Benefit Plan ("the Plan"), which, upon information and belief, is sponsored by Quicken Loans and underwritten and administered by LINA, and which Plan was intended to provide long-term disability income benefits as well as life insurance with waiver of premium to Quicken Loans employees, including Mrs. Morrison. This action is brought pursuant to § 502(a)(1)(B) of ERISA - 29 U.S.C. § 1132(a)(1)(B).

## III. The Parties

6) Mrs. Morrison is 54 years-of-age. She was, and continues to remain, a resident of Farmington, Michigan.

7) LINA is a Pennsylvania corporation, with its resident agent being: The Corporation Company, 30600 Telegraph Rd., Ste. 2345, Bingham Farms, MI 48025.

8) During all relevant times, the Plan constituted an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1), and, incidental to her employment, with Quicken Loans, Ms. Kramer received coverage under the Plan as a "participant," as

defined by 29 U.S.C. § 1002(7).  This claim relates to benefits due under the above-described Plan.

### IV.     Factual Statement/Medical History

9) Mrs. Morrison began working for Quicken Loans as a Mortgage Banker on or about December 10, 2012.

10) Mrs. Morrison was forced to resign her position on June 3, 2014 as a result of the following non-exhaustive list of serious medical conditions:

- Chronic diarrhea, nausea, bloating, and pain;

- chronic neck and back pain and resulting functional impairment due to a recurrent L5-S1 herniation, which prompted a February 12, 2015 revision discectomy, left L5-S1, and posterior lumbar interbody fusion, left L5-S1. Mrs. Morrison also suffers from moderate to advanced C4-C7 degeneration;

- history of breast cancer and bilateral mastectomy; and

- chronic kidney stones and associated pain.

11) Mrs. Morrison has not engaged in any substantial, gainful activity since June 3, 2014.

12) As an insured employee under the Plan, Mrs. Morrison applied to LINA/Quicken to begin receiving long-term disability benefits as of September 2, 2014, the expiration of the Plan's 90-day elimination period.

13) LINA denied Mrs. Morrison's claim on November 26, 2014.

14) Mrs. Morrison appealed LINA's adverse decision on May 21, 2015.

15) LINA reversed its denial on July 8, 2015 and paid Mrs. Morrison benefits beginning September 2, 2014 through May 12, 2016 but denied her claim effective May 13, 2016.

16) Mrs. Morrison again appealed LINA's adverse decision on October 27, 2016, which included the following medical evidence supporting Mrs. Morrison's contention that she remained (remains) unable to perform the material duties of her occupation/any occupation.

### A. Medical Evidence

17) Of note, Dr. Fertel (general surgery, thoracic and cardiovascular surgery) has consistently treated and supported Mrs. Morrison entitlement to benefits since her claim's inception. Specifically, on September 2, 2016, Dr. Fertel prepared another report supporting disability in which he opined as follows:

> She has subsequently had multiple surgeries since that time, including multiple hernias and gallbladder surgery. She was noted to have a spigelian hernia, which she still has. She continues to complain of bloating, chronic diarrhea, and has short gut syndrome, which causes her to go to [the bathroom] 10 to 20 times per day. This makes it extremely difficult for her to hold down any sedentary job . . . Due to the above symptomatology, however, Ms. Morrison continues to be disabled from work. (Ex. 2 of 10/27/16 administrative appeal)

18) Mrs. Morrison has treated Raymond T. Hajjar, D.O. for left breast reconstruction. (Ex. 3 of 10/27/16 administrative appeal)

19) Mrs. Morrison treats with Jeffrey Kimpson, M.D. for pain since November 2014. (Ex. 4 of 10/27/16 administrative appeal)

20) Mrs. Morrison continues to treat with Peter Bono, D.O., who has prepared multiple reports supporting Mrs. Morrison's total and permanent disability, one as recently as December 19, 2016 in which he indicated:

> As previously stated in my prior narrative, Ms. Morrison does qualify for a status of disability in my opinion. Following her lumbar fusion, I have diagnosed her with right-sided sacroiliitis, cervical degenerative disc disease, and lumbar degenerative disc disease (in addition to the original lumbar disc herniation at L5S1 for which I had performed the microdiscectomy and subsequently the lumbar fusion). She continues to experience back pain, which makes maintaining a prolonged position, whether seated or standing, difficult. Her frequent episodes of diarrhea, secondary to her abdominal injury and resulting surgical procedures including an ileostomy, further disrupt her job tasks throughout the day. Certainly, repeated positional changes and frequent bowel movements would interfere with both the continuity of her mental concentration and with the process of interpersonal communications with clients and coworkers. It is noted in her letter of claim denial, dated 5/12/16, that she is able to lift, carry, push or pull up to ten pounds occasionally and that she is able to stand and walk occasionally. In this patient's case, the limiting factor is not an inability to stand and walk occasionally, but a requirement to do so regularly and without regard for her job assignments. Additionally, Ms. Morrison does require opioid medications, both for chronic pain and for slowing of her accelerated bowel motility. Opioid medications are well known to slow cognition and potentially could limit her ability to complete tasks.
>
> It is my understanding that Ms. Morrison's own occupation as a Loan Officer has been classified in the Dictionary of Occupational Titles has met the criteria as a sedentary occupation, based on the limited physicality of the duties required of the occupation. It is only sensible to conclude that is the sum of her lumbar and gastrointestinal symptoms prevents her from doing so at any occupation. With this rationale, I believe it is appropriate for Ms. Morrison to be disabled. (10/27/16 administrative appeal)

21) The SSA determined that Mrs. Morrison became disabled under its rules around June 3, 2014, with benefits payable as of December 2014. On June 13, 2016, Mrs. Morrison reimbursed LINA a $24,501.16 SSDI overpayment.

22) On February 2, 2017, LINA maintained its claim denial.

23) LINA's actions have now foreclosed all avenues of administrative appeal and this matter is ripe for judicial review.

24) Because valid, objective, and well-supported proofs establish that Mrs. Morrison has met and satisfied the Plan's definition of disability as of May 13, 2016 going forward, she is entitled to receive long-term disability benefits and, if applicable, waiver of life premium, retroactive to the date they were wrongfully denied, May 13, 2016.

**WHEREFORE**, based upon the preceding reasons, Plaintiff prays for the following relief:

A) That this Court enter judgment in Mrs. Morrison's favor against LINA and order the immediate payment of disability income and other employee benefits, including group life insurance policy, retroactive to the date that benefits were denied, May 13, 2016.

B) That this Court order LINA to pay Mrs. Morrison post-judgment interest on all benefits that have accrued as of the date of judgment in accordance with M.C.L. § 600.6013 and 600.6455.

C) That this Court award attorneys' fees pursuant to 29 U.S.C. § 1132(g).

D) That Mrs. Morrison recovers all relief to which he may be entitled, along with the costs of litigation.

Respectfully submitted:

**FELDHEIM & WILENKIN, P.C.**


By: s/Ilana S. Wilenkin
Ilana S. Wilenkin (P61710)
Plaintiff's Attorney
30300 Northwestern Highway, Suite 108
Farmington Hills, MI 48334-3255
(248) 932-3505; Fax (248) 932-1734
ilana@lawsmf.com

Date: February 13, 2017